UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MARCELINO MACHADO-LOPEZ,
A-023-223-238

               Petitioner,

      v.

CHRISTOPHER CHESTNUT, WARDEN
OF THE CALIFORNIA CITY
DETENTION FACILIYT, et. al.,

               Respondents.

No.  1:26-cv-03219-DAD-DMC-HC

ORDER

And

FINDINGS AND RECOMMENDATIONS

Petitioner, an immigration detainee proceeding pro se, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Pending before the Court is Respondent's motion to dismiss, ECF No. 7, and Petitioner's motion to appoint counsel, ECF No. 3.  Respondent requested to withdraw the motion to dismiss, ECF No. 10, and filed an answer to the petition, ECF No. 13.

///

///

///

///

///

1

## I. BACKGROUND

### A.    Procedural History

On May 20, 2026, Respondent filed a motion to dismiss arguing dismissal is appropriate because Petitioner was deported on April 11, 2026. See ECF No. 7. In a footnote, Respondent provides: "Respondent notes that Petitioner's habeas petition is signed April 14, 2026. See ECF No. 1. However, Respondent confirmed that since Petitioner's removal on April 11, 2026, there is no record of him re-entering the United States or being re-detained." Id. at 1, n. 1. In opposition, Petitioner asserts that Respondent attempted to deport Petitioner, a citizen of Cuba, to Mexico on January 17, 2026, and April 11, 2026, and "both time[s] the Mexican Government refused to accept the Petitioner due to him being 75 years old with a high risk medical condition." ECF No. 8, pg. 2.

On June 17, 2026, the undersigned ordered Respondent to show cause why sanctions should not be imposed for providing false information and failing to correct such inaccuracies. See ECF No. 9. Respondent timely filed a response, informing the Court Respondent's counsel relied on information from Immigration and Customs Enforcement (ICE) when claiming Petitioner had been removed and that Respondent's counsel did not intentionally mislead the Court. See ECF No. 10. However, Respondent did not fully explain the circumstances around the "administrative error," that resulted in Respondent having inaccurate records showing Petitioner was deported and no record of Petitioner remaining in detention. Thus, the undersigned directed Respondent to file a status report with additional information and, based on Respondent's request to withdraw the motion to dismiss, directed Respondent to file an answer to the petition. See ECF No. 11.

Respondent timely filed a status update with a declaration signed by the Supervisory Detention and Deportation Officer Rigoberto Gilbert in support. See ECF Nos. 12 and 12-1. In the declaration, Officer Gilbert reiterated that "Due to an administrative error, ERO San Francisco records initially indicated that MACHADOLOPEZ had been removed to Mexico on or about April 11, 2026. As a result, ERO Bakersfield Control incorrectly recorded MACHADO-LOPEZ as having been removed when he was still detained at California City

Processing Center." ECF No. 12-1, pg. 2. Officer Gilber explained that the detention facility where Petitioner was held, which is managed by CoreCivic, Inc., utilized their subcontractor Transcorp America, LLC, for transportation on April 11, 2026, to transport a number of detainees to the San Ysidro Port-of-Entry for removal to Mexico. See id. Officer Gilber states that Customs and Border Protection (CBP), which is an agency within DHS but separate from ICE, handles removal orders at the San Ysidro Port-of-Entry and therefore, it is not clear to ICE how the "administrative error" occurred but has requested information from CBP regarding this incident. See id. at 2-3.  Officer Gilbert provided that ERO is still "conducting an investigation into this matter to assess how this occurred." Id. at 2. As to Petitioner's transport from San Ysidro Port-of-Entry back to the detention facility on April 11, 2026, Officer Gilbert describes a "[a] failure in communication between CoreCivic, Inc. and ERO," which "ERO is addressing this failure in communication and has alerted CBP, the supervisors at CoreCivic, Inc. and Transcorp America, LLC, of what transpired, and has asked employees to be provided with appropriate procedural guidance to avoid this kind of incident in the future." Id. at 3.  Further,

> ERO now requires CoreCivic to provide immediate written notice to ERO management when a detainee has been returned to the facility . . [and] ERO has asked the contracted transportation team to retrieve removal packets for any subjects who are denied removal at the San Ysidro Port-of-Entry, to avoid having an event incorrectly processed as a removal.

> Id.

Respondent's counsel additionally informs the Court that

> counsel has re-emphasized to Enforcement and Removal Operations ("ERO") the necessity of providing timely and accurate information to the Court in all habeas matters. Undersigned counsel has also alerted the supervisory chain within the U.S. Attorney's Office, Office of the Principal Legal Advisory for ICE, and ERO of the incident in this case to the end of ensuring that it does not happen again.

> ECF No. 12, pg. 2.

### B.     Factual Allegations

Petitioner contends he was born in Cuba and was detained by Department of Homeland Security (DHS) on December 28, 2025. See ECF No. 1, pgs. 4-5. Petitioner asserts that ICE tried to deport Petitioner to Mexico in January 2026, but Mexico "returned [Petitioner] back to the California City Detention Center when the Mexican Government refused to allow

3

Petitioner into Mexico . . . and once again, ICE indeed did the same ting on approximately 4-10-2026," and Petitioner again returned to he California City Detention Cetner on April 11, 2026. See id. at 5-6. Petitioner argues his Fifth Amendment right to due process has been violated and he is entitled to relief pursuant to the Supreme Court holding in Zadvydas. See id. at 6 (citing Zadvydas v. Davis, 533 U.S. 678, 690 (2001)). Petitioner asserts that there is no significant likelihood of his removal in the reasonably foreseeable future because "ICE hasn't been able to obtain travel documents for Petitioner to go to Cuba for years, well beyond his final removal order." Id.

In their answer, Respondent argues Petitioner's continued detention is lawful because "Petitioner is subject to an administratively final order of removal and detained pursuant to discretionary detention authority under 8 U.S.C. § 1231(a)(6)." ECF No. 13, pg. 2. Respondent contends that Petitioner was ordered removed in 1995, when Petitioner failed to appear for the immigration court hearing. See id. at 3 (citing ECF No. 13-1, pg. 18)[1]. According to Respondent, "[o]n an unknown date, Petitioner entered the United States at an unknown location"[2] and after Petitioner was detained in 2017 to effectuate his removal, he was released "on OSUP" on January 22, 2018. Id. at 3-4. Respondent contends that Petitioner was detained on December 26, 2025, when he was provided with a Notification of Revocation of Release and an opportunity to respond to the revocation in an informal interview. See id. at 4. Respondent asserts that Petitioner was provided notice of third country removal to Mexico on January 5, 2026, and following an inquiry into Petitioner claim of fear of removal to Mexico, Petitioner was interviewed and it was "determined that he had not established that it was more likely than not that he would be persecuted or tortured in Mexico." Id. at 4-5.

///

---

[1] Respondent provides a lengthy factual background regarding Petitioner's criminal history and interactions with Immigration and Naturalization Service (INS) since 1995, only the relevant facts are summarized here. See id. at 2-5.

[2] Based on the way Respondent presented the information, it appears Respondent is implying that Petitioner left the United States after he was ordered removed in 1995 and then re-entered the United States ECF No. 13, pg. 3. However, Respondent never claims Petitioner left the United States after he was ordered removed and there is no evidence cited to support such a claim.

4

Respondent argues that Petitioner is detained pursuant to § 1231(a)(6), concedes his detention has now exceeded the presumptively reasonable six-month, and recognizes Petitioner asserts that his removal is not likely in the reasonably foreseeable future because the government cannot obtain travel documents for Petitioner from Cuba. See id. at 6. Respondent asserts that they are trying to remove Petitioner to Mexico but "[n]evertheless, Respondent acknowledges that attempts at removal to Mexico have not been successful." Id. Respondent additionally claims the procedures for revoking release, §§ 241.4, 241.13, were followed as Petitioner was provided notice of the revocation of his release and an informal interview. See id. Respondent argues that "[t]he procedural process provided to Petitioner is constitutionally adequate under the circumstances." Id. Applying the Mathews factors, Respondent argues that "Petitioner has a strong liberty interest, [but] his is a lesser liberty interest because he is subject to a final removal order," there is little risk of erroneous deprivation because Petitioner "subject to a final removal order, and § 1231(a)(6) authorizes Petitioner's detention in order to effectuate that order," and "the government has a strong interest in effectuating a final removal order." Id. at 6-7. Respondent asserts the government interest is even stronger due to Petitioner's "long history of serious criminal offenses." Id. Thus, Respondent argues Petitioner's detention is constitutional and the petition should be denied.

## II. DISCUSSION

### A.     Order to Show Cause

The undersigned expresses deep concern that "an administrative error" could result in Respondent's records showing that Petitioner was removed to Mexico when he was not removed and that their records did not show that Petitioner remained in immigration detention. Though Respondent's counsel provided additional information to the Court, it is clear that the agencies and private contractors involved have yet to identify how this occurred. Further, it is still not clear how the California City Detention Facility had Petitioner detained without any record of him being there, from April 11, 2026, until approximately June 9, 2026, when Petitioner informed the Court and Respondent that he was still in detention. The undersigned appreciates that agencies

5

have already implemented additional procedural safeguards to prevent such an error in the future and that they continue to investigate the issue to understand how this happened.

As to the conduct by Respondent's counsel which gave rise to the order to show cause, the undersigned finds it most concerning that Petitioner's opposition, ECF No. 8, was filed on the docket June 10, 2026, and for seven days, Respondent failed to respond. Respondent states that they "had intended to correct the inaccuracy with the Court prior to the issuance of its order, but believed a declaration was prudent, if not necessary, to support counsel's representations, and the declaration took until today to be received by undersigned counsel." ECF 10, pg. 2. Absent informing the Court through a public filing, the Court does not know any efforts are being taken to remedy the misstatement of fact from ECF No. 7. Only after the undersigned issued an order to show cause threatening sanctions for providing inaccurate information and failing to correct the record did Respondent's counsel timely inform the Court that the information provided in their motion to dismiss was false. Even if Respondent's counsel was unable to quickly provide a declaration and believed one was necessary, Respondent's counsel could have, and should have, informed the Court that they were looking into the issue and committed to filing a status update within a reasonable amount of time to provide more information. Thus, the issue here is not only an alleged "administrative error," which resulted in Respondent providing inaccurate information in the motion to dismiss, but also a failure to correct the record when Respondent's counsel was informed the information was inaccurate.

However, it does not appear to the undersigned that Respondent's counsel intentionally misled the Court. Additionally, the undersigned appreciates the seriousness with which Respondent's counsel has responded to the Court's order to show cause. Further, the undersigned recognizes the continued efforts to investigate the issue and the measures already enacted to increase communication procedures in an effort to guarantee this does not occur again. Though, as previously discussed, counsel is advised to more promptly correct the record when they become aware that they may have provided false information to the court, finding no bad faith on the part of Respondent's counsel, the undersigned will discharge Respondent's counsel from the order to show cause and decline to impose sanctions at this time.

6

**B.    Likelihood of Removal**

When the Government wants to remove a noncitizen,[3] the normal path is through removal proceedings, which require an evidentiary hearing before an immigration judge. 8 U.S.C. § 1229(a). In the removal proceeding, the Immigration Judge determines both whether a noncitizen may be removed and to what country or countries he may be removed. 8 C.F.R. § 1240.12(d) ("When a respondent is ordered removed from the United States, the immigration judge shall identify a country, or countries in the alternative, to which the alien's removal may in the first instance be made, pursuant to [8 U.S.C. § 1231(b)(2)].") Section 1231(b)(2) requires that the immigration judge prioritize removal to countries as follows:

> (1) An alien shall be removed to the country of his choice (subparagraphs (A) to (C)), unless a condition eliminating that command is satisfied; (2) otherwise he shall be removed to the country of which he is a citizen (subparagraph (D)), unless a condition eliminating that command is satisfied; (3) otherwise he shall be removed to a country with which he has a lesser connection (subparagraph (E), clauses (i) to (vi), including the country of his birth (clause (iv))); or (4) if that is "impracticable, inadvisable, or impossible," he shall be removed to another country whose government will accept him (subparagraph (E), clause (vii)).

> Jama v. Immigr. and Customs Enf't, 543 U.S. 335, 341 (2005) (citing 8 U.S.C. § 1231(b)(2)).

If the U.S. Department of Homeland Security (DHS) is "unable to remove the alien to the specified or alternative country or countries, the order of the immigration judge does not limit [DHS's authority] to remove the alien to any other country as permitted by [8 U.S.C. § 1231(b)]." 8 C.F.R. § 1240.12(d). Removal to countries identified outside of removal proceedings are referred to as "third country removals." Notwithstanding DHS's authority to effectuate third country removals, noncitizens may not be removed to countries where, as potentially relevant here, their "life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion," (referred to as "withholding of removal"), or where "it is more likely than not that [the noncitizen] would be tortured if removed to the proposed country of removal" (referred to as the "Convention Against Torture" (CAT)). 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 208.16. Both withholding of removal and

---

[3] The court prefers the term "noncitizen" to "alien." Because the regulatory language at issue frequently uses the term "alien," the court will use the terms interchangeably in this order.

the CAT provide mandatory protections from removal to the country or countries where the noncitizen is more than likely to be persecuted or tortured. 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 208.16.2 While DHS has the authority to remove a noncitizen to a country not identified in the final removal order, there is no statute or regulation providing a specific procedure to effectuate such a third country removal. See Aden v. Nielsen, 409 F. Supp. 3d 998, 1009 (W.D. Wash. 2019).

After a noncitizen is ordered removed, ICE "shall remove the alien from the United States within a period of 90 days . . . ." (the "removal period"). 8 U.S.C. § 1231(a)(1)(A). The removal period begins, as relevant here, on the "date the order of removal becomes administratively final." Id. § 1231(a)(1)(B)(i). ICE is required to detain the noncitizen during the removal period. § 1231(a)(2). If the noncitizen is not removed during the removal period, ICE "may" continue to detain the noncitizen after the removal period if he falls into certain categories, including that he entered "the United States without being admitted or paroled," or arrived "in the United States at any time or place other than as designated by the Attorney General." §§ 1231(a)(6), 1182(a)(6)(A)(i). Although there is no explicit statutory limit to the period for which a noncitizen may be detained following the removal period, in Zadvydas the Supreme Court noted that a "statute permitting indefinite detention of an alien would raise a serious constitutional problem" under the Fifth Amendment Due Process Clause. Zadvydas v. Davis, 533 U.S. 678, 690 (2001). Accordingly, the Supreme Court held that after a presumptively reasonable six-month period of post-removal period detention,

> once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

Id. at 701.

///

///

8

According to Respondent, Petitioner has been detained since December 26, 2025, just over six months at the date of this order. Respondent characterizes Petitioner's showing as a claim that his removal is not likely because Respondent does not have a travel document for Petitioner from Cuba. However, while Petitioner does cite that in his petition, he additionally informed the Court that the government attempted to remove Petitioner to Mexico, and according to Petitioner, Mexico refused to accept Petitioner. Perhaps due in part to the lack of clarity surrounding the "administrative error" that occurred around April 11, 2026, Respondent does not challenge Petitioner's claim that Mexico refused to accept Petitioner. Based on the record before the Court, the undersigned finds Petitioner has shown good reason to believe that there is no significant likelihood of Petitioner's removal in the reasonably foreseeable future, and the burden shifts to Respondent to rebut this showing.

Respondent's only response to this showing is to state that they are trying to remove Petitioner to Mexico, not Cuba. Respondents do not rebut Petitioner's claim that Mexico will not accept him nor provide any travel documents for Petitioner from Mexico or Cuba. Indeed, Respondent concedes that efforts to remove Petitioner to Mexico have been unsuccessful, apparently confirming Petitioner's claim. Thus, the undersigned finds that there is no significant likelihood of Petitioner's removal in the reasonably foreseeable future and will recommend the petition be granted and Respondents be ordered to release Petitioner immediately.

### III. CONCLUSION

Based on the foregoing, the undersigned recommends and orders:

1. It is ORDERED that Respondent is DISCHARGED from the order to show cause, ECF No. 9., and the undersigned declines to impose sanctions;

2. It is RECOMMENDED that Respondent's motion to dismiss, ECF No. 7, be withdrawn;

3. It is RECOMMENDED that the petition, ECF No. 1, be granted;

4. It is RECOMMENDED that Respondents be ORDERED to immediately release Petitioner, MARCELINO MACHADO-LOPEZ, A-023-223-238,

on the same conditions as his prior release, with all Petitioner's documents and possessions;

5.      It is RECOMMENDED that Respondents be ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, which include, at a minimum, strict compliance with the requirements of 8 C.F.R. § 241.13(i);

6.      It is RECOMMENDED that Respondents be ORDERED to file a notice of compliance within three (3) days of the District Judge's order.

7.      It is RECOMMENDED that Petitioner's motion to appoint counsel, ECF No. 3, be DENIED AS MOOT.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b). Thus, within 7 days after being served with these findings and recommendations, any party may file written objections with the Court. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  July 1, 2026

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE

10